UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK WONDERS,<br><br>      Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE ARMY OFFICE OF THE GENERAL COUNSEL,<br><br>      Defendant. | Civil Action No. 23-2770 (TNM) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD........................................................................................................ 2

    I.     Rule 12(b)(1)............................................................................................... 2

    II.    Summary Judgment Generally................................................................... 3

    III.   Summary Judgment in FOIA Cases........................................................... 4

ARGUMENT..................................................................................................................... 5

    I.     Plaintiff's Claims Regarding his 2022 FOIA Request Should Be Dismissed Because He Failed to Exhaust Administrative Remedies When He Failed to Appeal His Earlier FOIA Requests ........................................................... 5

    II.    If Plaintiff's Claims Survive the Motion to Dismiss, the Court Should Find That the Army Properly Withheld the Documents Pursuant to Exemption 5 ................. 7

          A.    Attorney-Client Privilege............................................................... 7

          B.    Foreseeable Harm ........................................................................... 8

          C.    Reasonable Segregability............................................................... 9

    III.   Plaintiff Has Not Effectively Pled a Waiver of Sovereign Immunity for His Non-FOIA claims................................................................................................. 10

CONCLUSION................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
   905 F. Supp. 2d 206 (D.D.C. 2012) ........................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................... 3

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) ..................................................................................................... 2

*Banks v. DOJ*,
   538 F. Supp. 2d 228 (D.D.C. 2008) ........................................................................... 5

*Burka v. U.S. Dep't of Health & Human Servs.*,
   87 F.3d 508, 516 (D.C. Cir. 1996) .............................................................................. 7

*Coal. for Underground Expansion v. Mineta*,
   333 F.3d 193 (D.C. Cir. 2003) .................................................................................... 2

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .................................................................................... 7

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................. 4

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988) ..................................................................................................... 9

*Elgin v. Dept. of Treasury*,
   567 U.S. 1 (2012) ....................................................................................................... 10

*Exxon Corp. v. F. T. C.*,
   663 F.2d 120 (D.C. Cir. 1980) .................................................................................... 4

*F.A.A. v. Cooper*,
   566 U.S. 284 (2012) ..................................................................................................... 9

*Founding Church of Scientology of Washington, D. C., Inc. v. Nat'l Sec. Agency*,
   610 F.2d 824 (D.C. Cir. 1979) .................................................................................... 4

*Goland v. Cent. Intelligence Agency*, ,
   607 F.2d 339 (D.C. Cir. 1978) .................................................................................... 4

*Gunn v. Minton*,

568 U.S. 251 (2013) ........................................................................................................... 2

*Herbert v. Nat'l Acad. of Scis.*,
   974 F.2d 192 (D.C. Cir. 1992) ........................................................................................ 2

*James Madison Ltd. v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996) ........................................................................................ 2

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................................................ 2

*Koutny v. Martin*,
   530 F. Supp. 2d 84 (D.D.C. 2007) ................................................................................. 2

*Lane v. Pena*,
   518 U.S. 187 (1996) ........................................................................................................ 9

*Laningham v. Navy*,
   813 F.2d 1236 (D.C. Cir. 1987) ...................................................................................... 3

*Manchester v. DEA*,
   823 F. Supp. 1259 (E.D. Pa. 1993) ................................................................................. 8

*Martin v. Off. of Special Counsel*,
   819 F.2d 1181 (D.C. Cir. 1987) ...................................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................ 3

*McGehee v. C.I.A.*,
   697 F.2d 1095 (D.C. Cir. 1983) ...................................................................................... 4

*Meza v. Dep't of Just.*,
   719 F. Supp. 2d 1 (D.D.C. 2010) ................................................................................... 8

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ........................................................................................ 5

*Moms Against Mercury v. FDA*,
   483 F.3d 824 (D.C. Cir. 2007) ........................................................................................ 2

*Network IP, LLC v. FCC*,
   548 F.3d 116 (D.C. Cir. 2008) ........................................................................................ 2

*Pinson v. DOJ*, F. Supp.
   3d 125 (D.D.C. 2014) .................................................................................................... 5

*Reep v. Dep't of Just.*,
   No. 18-5132, 2018 WL 6721099 (D.C. Cir. Dec. 18, 2018) ................................................. 5

*SAE Prods., Inc. v. F.B.I.*,
   589 F. Supp. 2d 76 (D.D.C. 2008) ................................................................................... 3

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*,
   833 F.2d 1560 (Fed. Cir. 1987) ....................................................................................... 3

*Toensing v. DOJ*,
   890 F. Supp. 2d 121 (D.D.C. 2012) ................................................................................. 6

*Trans Union LLC v. FTC*,
   141 F. Supp. 2d 62 (D.D.C. 2001) ................................................................................... 4

*Weber v. United States*,
   209 F.3d 756 (D.C. Cir. 2000) ....................................................................................... 10

*Whitman v. Dep't of Transp.*,
   547 U.S. 512 (2006) ...................................................................................................... 10

**Statutes**                                                                                                                   **Page(s)**

28 U.S.C. § 2401(a) ................................................................................................................ 6

5 U.S.C. § 552 ........................................................................................................................ 1

5 U.S.C. § 702 ........................................................................................................................ 4

Defendant, Department of the Army (the "Army") Office of the General Counsel, by and through undersigned counsel, respectfully moves to dismiss Plaintiff's complaint, or in the alternative, for summary judgment. Plaintiff persists in seeking a privileged legal memorandum, so much so that he has requested it at least three times. *See* Patrick Decl. ¶¶ 1, 2. However, even if Plaintiff's claims can survive the Army's motion to dismiss, and even when viewed in light most favorable to Plaintiff, the Army should be granted summary judgment because the document he seeks is clearly subject to the attorney-client privilege.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed the instant complaint on September 14, 2023. ECF No. 1. As a basis for jurisdiction, he cites the Freedom of Information Act ("FOIA") 5 U.S.C. § 552(a)(4)(B), [Army Regulation] 380-67, and the "Attorney-Client Privilege exception." *Id.* No FOIA requests or responses are included as attachments or exhibits to the complaint. Further, the Administrative Procedure Act ("APA') is not mentioned in the Complaint itself, but Plaintiff did check "Administrative Procedure Act/Review of Agency Decision" on the Civil Cover Sheet. ECF No. 1-1 at 1.

Despite the lack of detail in Plaintiff's complaint, the Army has been able to locate three separate FOIA requests Plaintiff has submitted—all seeking a privileged legal review memorandum. Patrick Decl. ¶¶ 1, 2. These three FOIA requests were submitted in May 2012, April 2014, and October 2022. *Id.* The 2012 and 2014 requests were denied because they sought privileged information, and the Army informed Plaintiff it was taking no action on the 2022 request because it was simply a duplicate of his earlier requests. *Id.*

# LEGAL STANDARD

I. **Rule 12(b)(1)**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), federal courts must be mindful that they "are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted). Indeed, federal courts are "forbidden . . . from acting beyond [their] authority," *Network IP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and therefore they "have an affirmative obligation to consider whether the constitutional and statutory authority exist . . . to hear each dispute." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)) (internal quotation marks omitted). Absent subject-matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(h)(3).

Finally, "[a]lthough 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert*, 974 F.2d at 197); *see also Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) (in resolving a motion to dismiss pursuant to Rule 12(b)(1), a court

"may also consider 'undisputed facts evidenced in the record' ") (internal citations omitted); *SAE Prods., Inc. v. F.B.I.*, 589 F. Supp. 2d 76, 79 (D.D.C. 2008).

II.     **Summary Judgment Generally**

Where no genuine dispute exists as to any material fact, summary judgment is required. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *See id*. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the Court to find that he is entitled to relief.

In *Celotex Corp. v. Catrett*, the Supreme Court held in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In *Anderson*, the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (establishing that non-movant is "required to provide evidence that would permit a reasonable jury to find" in its favor). In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules

as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.     Summary Judgment in FOIA Cases

The summary judgment standards set forth above also applies to FOIA cases, which "typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute when viewing the facts in the light most favorable to the non-movant.  *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979).  The moving party must show that each document falling within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  *Exxon Corp. v. FTC,* 663 F.2d 120, 126 (D.C. Cir. 1980) (holding that an index of documents and two affidavits describing the search, as well as which documents were produced and which were exempt, was sufficient for the defendant to prevail on a summary judgment motion).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence that show the documents in question were produced or are exempt from disclosure.  *See Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978) (holding that an affidavit that provides "detailed descriptions of the searches undertaken, and a detailed explanation of why further searches would be unreasonably burdensome," is sufficient for the Agency to win on a motion for summary judgment); *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983) (affirming that the district court may "rely upon affidavits submitted by the agency, describing its search procedures and explaining why a more thorough investigation would have been unduly burdensome"); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (reiterating that summary judgment in FOIA cases may be awarded

solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

## ARGUMENT

I. **Plaintiff's Claims Regarding his 2022 FOIA Request Should Be Dismissed Because He Failed to Exhaust Administrative Remedies When He Failed to Appeal His Earlier FOIA Requests**

As a threshold issue, Plaintiff's complaint does not specify the FOIA request as to which he is seeking relief. However, the 2012 and 2014 FOIA requests are clearly time-barred, leaving only the 2022 request to consider here. "It is 'beyond dispute' that the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) applies to . . . [FOIA] requests." *Reep v. Dep't of Just.*, Civ. A. No. 18-5132, 2018 WL 6721099, at *1 (D.C. Cir. Dec. 18, 2018) (per curiam) (quoting *Spannus v. Dep't of Just.*, 824 F.2d 52, 55-56 (D.C. Cir. 1987)). The Army responded to the 2012 and 2014 requests by asserting the attorney-client privilege in accordance with Exemption 5, 5 U.S.C. § 552(b)(5) and withholding the documents. Patrick Decl. ¶¶ 1, 2. The Army then informed Plaintiff of his right to appeal within 60 days of the date of the responses. Plaintiff chose not only to forgo an appeal, but to wait over a decade to file the instant case. *Id.* at ¶ 3.

Moving on, it is well-settled that "[e]xhaustion of administrative remedies is generally required before seeking judicial review under FOIA." *Banks v. Dep't of Just.*, 538 F. Supp. 2d 228, 232 (D.D.C. 2008) (quoting *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam)). "[T]his means the requester must appeal any adverse determination of his FOIA request to the head of the agency before suing that agency in federal court." *Pinson v. Dep't of Just.*, 69 F. Supp. 3d 125, 131 (D.D.C. 2014) (citing *Hidalgo v. FBI*, 344 F.3d 1256, 1259-60 (D.C. Cir. 2003)). "If

the requester fails to exhaust administrative remedies before filing suit, a court can dismiss the complaint or grant summary judgment for the agency." *Pinson*, 69 F. Supp. 3d at 131 (citing *Wilbur*, 355 F.3d at 676-77). "Failure to exhaust administrative remedies is not a mere technicality, a court must decline to decide the merits of an unexhausted FOIA claim[.]" *Toensing v. Dep't of Just.*, 890 F. Supp. 2d 121, 136 (D.D.C. 2012) (Howell, J.).

Here, in response to the May 8, 2012 FOIA request, Defendant's response informed Plaintiff of its decision to withhold the responsive record pursuant to FOIA Exemption (b)(5). Patrick Decl. ¶ 2. Rather than administratively appeal the denial, Plaintiff chose to file identical FOIA requests in 2014 and 2022, thereby failing to exhaust his administrative remedies. *See id*. ¶¶ 1-2. "[W]hen withholding decisions are made in an unexhausted request, a subsequent, identical request cannot cure a prior failure to exhaust." *Toensing*, 890 F. Supp. 2d at 136. In *Toensing*, the District Court further explained:

> The alternative would be to require an agency faced with a duplicative FOIA request to reassess any previous withholding decisions made within the scope of the duplicative request. Yet, withholding decisions are often the most labor-intensive and complicated aspect of an agency's FOIA response efforts. Thus, after agency employees have already processed a FOIA request and made withholding decisions, requiring the same or yet another agency employee to plow the same ground all over again, while a backlog of requesters remain waiting for attention, is not an efficient use of agency resources.

*Id*. This principle applies here, as well, because like the defendants in *Toensing*, the Army properly made a decision to withhold records that were requested in an earlier, duplicative FOIA request that was not appealed. Therefore, the Court should dismiss any claims regarding the 2022 FOIA request because the Plaintiff failed to exhaust the administrative remedies available to him.

**II.     If Plaintiff's Claims Survive the Motion to Dismiss, the Court Should Find That the Army Properly Withheld the Documents Pursuant to Exemption 5**

   **A.     Attorney-Client Privilege**

FOIA Exemption 5 allows agencies to withhold "inter-agency and intra-agency memorandums or letters, which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requestors." *Burka v. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

Thus, Exemption 5 encompasses the deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863-64 (D.C. Cir. 1980); *Am. Immigr. Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 216 (D.D.C. 2012). At issue here is the attorney-client privilege. The purpose of the privilege is to protect the adversarial legal system itself, as the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans. *Id.* Specifically, the privilege concerns "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

Per Exemption 5, the attorney-client privilege applies to the document at issue here because the July 27, 2010 legal review that Plaintiff seeks was drafted by an attorney at the Fort Rucker, Alabama Office of the Staff Judge Advocate in order to provide legal advice to an Army Regulation 15-6 investigating officer and the officer who appointed the investigating officer. *See* Patrick Decl. ¶ 5(c). The attorney's advice evaluated, among other things, "[w]hether sufficient

evidence supports the findings of the investigation or those substituted or added by the appointing authority." *Id.* ¶ 5(b)(3). Accordingly, the memorandum offers opinions given by an attorney to the client based upon particular facts of the subject investigation that informed the attorney's advice. *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005) (attorney-client privilege "privilege also encompasses any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information"). It matters not whether in broad form the underlying subject matter that the attorney's opinion concerns may be known to Plaintiff or others, as the *specifics* of the attorney's communication and the particular facts upon which that opinion is founded are not known publicly. *See Upjohn Co. v. United States*, 449 U.S. 373, 395-96 (1981); *see also* Patrick Decl. ¶ 5(d) ("The Army has maintained confidentiality of this July 27, 2010 attorney-client communication."); *Schlefer v. United States*, 702 F.2d 233, 244 n.26 (D.C. Cir. 1983) (attorney-client privilege "'permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts'" (quoting *Mead Data*, 566 F.2d at 254 n.28)).

### B. Foreseeable Harm

Here, the Army has established that disclosing information protected by the attorney-client privilege would inhibit government attorneys from appropriately fulfilling their duties representing the United States by providing candid legal advice for fear that their mental impressions may be disclosed to persons other than the intended recipients of the legal advice. *See* Patrick Decl. ¶ 6 ("Public disclosure of attorney-client communications would seriously disrupt open communication between the command and attorneys, as well as deprive government decision-makers of the full and candid advice of their counsel."). Disclosure would inhibit the agency's ability to evaluate and rely upon its legal professionals' interpretations and consider perceived weaknesses or strengths. Disclosure would also negatively impact the agency's ability to solicit

and communicate recommended strategies involving its attorneys and various legal issues. *See id.* As "disclosure of privileged information is a harm in and of itself[, and, w]hen invoking the attorney-client privilege, then, an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm," the Army has shouldered its burden here. *Ecological Rts. Found. v. EPA*, Civ. A. No. 19-980 (BAH), 2021 U.S. Dist. LEXIS 27748, at *107–08 (D.D.C. Feb, 13, 2021). In any event, the foreseeable harm showing is not necessary for responses to requests submitted prior to 2016, as Plaintiff's original requests were. *See Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 358 (D.C. Cir. 2021) ("This rule applies only to requests for records under FOIA made after June 30, 2016.").

### C. Reasonable Segregability

FOIA generally requires that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The D.C. Circuit has held, however, that there is no duty to segregate materials which are, by definition, wholly exempt from disclosure. *See Martin v. Off. of Special Counsel*, 819 F.2d 1181, 1186 (D.C. Cir. 1987); *Jud. Watch,* 432 F.3d at 371. Accordingly, in the FOIA context, where a document is withheld pursuant to the attorney-client privilege doctrine, the protection covers the entire document if the facts are intricately intertwined with the legal analysis. *Mead Data Center., Inc.*, 566 F.2d at 260 (noting that a "document must be disclosed unless they are inextricably intertwined with exempt portions"); *Manchester v. DEA*, 823 F. Supp. 1259, 1269 (E.D. Pa. 1993) (segregation not required where "factual information is incidental to, and bound with, privileged" information), *aff'd*, 40 F.3d 1240 (3d Cir. 1994).

Here, "the document is intricately intertwined with legal analysis and no portions of it may be released beyond what was previously released to Plaintiff'. No other meaningful information in the documents could be discerned without disclosing information warranting protection under the

law." Patrick Decl. ¶ 8. Segregation is not required in such circumstances, and, indeed, release of any part of the information withheld would risk subverting the privileged communications described above.

III.     **Plaintiff Has Not Pled a Recognized Waiver of Sovereign Immunity for His Non-FOIA claims**

"A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). For the same reason that courts "refuse to enforce a waiver that is not unambiguously expressed in the statute," courts also "construe any ambiguities in the scope of a waiver in favor of the sovereign." *FAA v. Cooper*, 566 U.S. 284, 291 (2012). In other words, courts require that "the scope of Congress' waiver be clearly discernable from the statutory text" and, if it is not, courts "take the interpretation most favorable to the government." *Id*.

Litigants often invoke the APA as a waiver of sovereign immunity for claims seeking non-monetary relief involving an agency action. *See* 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."). Here, however, Plaintiff has failed to establish that the APA can be used to provide him with the waiver of sovereign immunity that he seeks.

First, Plaintiff does not directly state that he is using the APA to challenge the agency's determinations regarding his security clearance. However, Plaintiff provides no further basis for federal subject matter jurisdiction and no federal right of action. Plaintiff surely faces a high bar if he were to attempt to use the APA to challenge the agency's determination regarding his security clearance. In *Department of Navy v. Egan*, 484 U.S. 518 (1988), the Supreme Court held that there

is no judicial review of the decision to suspend or revoke a security clearance, because such decisions are part of the core authority of the Executive in national security and military affairs, and Congress has not provided otherwise. *Id*. at 527-30. As the Supreme Court recognized: "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment[.]" *Id*. at 529. "In other words, the general presumption of reviewability of agency action does not apply to security clearance decisions." *Weber v. United States*, 209 F.3d 756, 760 (D.C. Cir. 2000).

Next, Plaintiff does not directly state that he seeks to use the APA to "return the issue back to the Merit Systems Protection Board [('MSPB')] for a complete and fair review of this matter." ECF No. 1 at 4. However, even if he did, the Civil Service Reform Act ("CSRA") "established a comprehensive system for reviewing personnel actions taken against federal employees." *Elgin v. Dept. of Treasury*, 567 U.S. 1, 5 (2012). This system precludes challenges arising out of a federal employment relationship except through the administrative and judicial review expressly authorized by the CSRA. *Id.* at 10-14.

As the Supreme Court explained in *Elgin*, covered employees can seek review of an employment decision if they are subjected to personnel actions "'for such cause as will promote the efficiency of the service,'" *id.* at 5 (citing 5 U.S.C. §§ 7503(a), 7513(a)). An employee may challenge any such decision by appeal to the MSPB with a right of appeal to the United States Court of Appeals for the Federal Circuit. *Id.* at 6; *see also* 5 U.S.C § 7513(d), § 7701(a)(1)-(2), § 7703(b). In other words, "the remedy [offered by the CSRA] *displaces* the plenary district court action entirely, just as a statute channeling agency review to a circuit court displaces a direct review

action in the district court." *Elgin v. Dep't of Treasury*, 641 F.3d 6, 9 (1st Cir. 2011) (emphasis in original) (citing *Whitman v. Dep't of Transp.*, 547 U.S. 512, 513-14 (2006) (per curiam)).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice or, alternatively, summary judgment should be entered in favor of Defendant.

Dated: February 29, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      */s/ Patrick A. Doyle*
PATRICK A. DOYLE
Special Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2574

*Attorneys for the United States of America*