UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
300 Constitution Avenue, N.W.
Washington, D.C. 20001

IN THE MATTER OF:

Mark Geraghty Wonders
1177 Mose Ware Road
Ozark, Alabama 36360
      Plaintiff,

vs.

Department of the Army
Office of the General Counsel
104 Army Pentagon
Washington, D.C. 20310-0104

      Defendant,

Civil Action No. 1:23-cv-02770-TNM

# PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION

Comes now the Plaintiff's Combined Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Cross-Motion as ORDERED by His Honor on 17 January 2024 and in response to the Defendant's 29 February 2024 motion. The following document and sixteen (16) Plaintiff Exhibits are respectfully submitted to the COURT:

## I. Overview

Since 21 September 2010, the Plaintiff has attempted over a dozen times, and in various venues, to obtain copies of all documents submitted by the Agency to Security Clearance Adjudicators -- specifically an unredacted copy of the 27 July 2010 Ranchino Legal Review.

As the following facts and documentation will show, this legal review, claimed to be an attorney-client work product and exempt from release under FOIA, was, in fact, 1) freely submitted to Security Clearance Adjudicators; 2) submitted in an unredacted format according to the Agency Security Manager; 3) submitted with another legal review also in an unredacted format; 4) considered as part of the Agency evidence package according to the Security Clearance Adjudicator; 5) finally and inexplicably vanished in a falsified FOIA release – only after several

**RECEIVED**
MAR 12 2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

confusing months when the Agency had trouble, according to an Agency Administrative Judge, locating and identifying the evidence, and; 6) the Agency released a completely unredacted copy of the other submitted (Sanders) legal review. The following are the Plaintiff's submitted facts for the record:

## II. Statement of Facts

The following facts and supporting exhibits are respectfully submitted:

a. **The 23 June 2010 Sanders Legal Review (Plaintiff Exhibit ("PE") A) was freely submitted to Security Adjudication Officials.** The legal review did not have any attorney-client privilege markings and was completely unredacted. (PE A, P. 2)

b. **The 27 July 2010 Ranchino Legal Review (PE B) was freely submitted to Security Adjudication Officials, but released to the Plaintiff completely redacted.** The legal review did not have any attorney-client privilege markings labels and was completely redacted. (PE B, P.2)

c. **The 29 June 2015 Request for Information ("RFI") response to the Union (PE C) confirmed the Ranchino Legal Review and investigation was submitted to Security Officials completely unredacted.** (PE C, P. 5) Further, then Fort Rucker Security Manager Kathy Johnson also confirmed no documents were submitted in redacted format. (PE C, P.5)

d. **U.S. Army Central Personnel Security Clearance Facility (CCF) Security Adjudicator Lonny Kessler testified he received and considered an unredacted copy of the 27 July 2010 Ranchino Legal Review** (PE D, Transcript ("Tr.") Pp. 575, 577). Further, **Kessler incorrectly inferred the Plaintiff submitted the document.** (PE D, Tr., P. 575)

e. **The 27 March 2012 FOIA release (PE E) lists no Ranchino Legal Review.** The U.S. Army Intelligence and Security Command (INSCOM) FOIA release (PE 2, P. 2) of the 24 February 2012 U.S. Army CCF "Certification of Documents pertaining to Wonders, Mark G.," [PE E, P. 3] through HQDA DCS G2, inexplicably stated that "...Please note <u>Exhibit 44</u> [of the 68-exhibit list] was received by this office as a redacted document and we do not have the unredacted original."

2

1. The "Redacted July 26, 2010 Report" (Exhibit 44)(PE E, P.5) is apparently the Ranchino investigation, which they claim was forwarded to them as redacted.

2. The Sanders 23 June 2010 legal review (Exhibit 17)(PE E, P. 4) is listed as a "Legal Review Finding" and not redacted.

3. The Certification of Documents (PE E, P. 3) certifies that "...the documents ... to include those provided to CCF from Mr. Wonders and his attorney are all the documents/materials CCF used to base its adjudicative determination..."

4. The certified FOIA listing **makes no mention** of the submitted Ranchino legal review.

5. **Agency certification, Security Manager statement, and Security Adjudicator statements conflict and seriously damage Agency credibility regarding the 27 June 2010 Ranchino Legal Review.** Further, the listing of the Sanders legal review seems to confirm security officials regularly consider said documents.

f. **Agency colluded to withhold original favorable security decision from Plaintiff (PE F).** On 5 October 2010 (PE F, P. 2), the CCF originally restored the Plaintiff's security clearance; however, after Fort Rucker Security Manager Johnson notified Fort Rucker senior leaders of the decision, Agency officials colluded with Security officials to rescind and recharge the Plaintiff (PE F, Pp. 3-4).

   1. **On 6 October 2010**, Deputy to the Garrison Commander Justin Other Mitchell e-mailed fellow Fort Rucker senior leaders recommending the decision be withheld from the Plaintiff. (PE F, P. 4)

   2. **Mitchell also recommended senior leaders find and delete all e-mails** concerning this action from their computers. (PE F, P. 4)

g. **After the Agency coordinated with CCF, the original decision was rescinded and charges refiled on 7 October 2010 (PE G).**

   1. CCF never notified Plaintiff of the rescinded favorable decision.

3

2. Only after Plaintiff drove to CCF at Fort Meade in March 2011 to request all documents did they release the rescinded favorable decision.

h. **Fort Rucker Staff Judge Advocate Office lawyers misled Plaintiff's attorney about Agency collusion with CCF (PE H).** The 3 and 5 May 2011 Fort Rucker Staff Judge Advocate (LTC Kevin Robitaille) Responses (PE H, Pp. 2-3) to Plaintiff's attorney Stuart Kirsch stating that "...no actions were taken by any USAACE [Fort Rucker] official based on the 5 October 2010 [CCF decision] letter," (PE H, P. 3) and that "...Your allegations that the 5 October 2010 letter demonstrates some malfeasance on the part of USAACE officials are baseless." (PE H, P. 2)

i. **Agency tries to discredit Plaintiff toward CCF deciding officials, labeling Plaintiff as a "threat." (PE I)** The 13 October 2010 Fort Rucker Security Manager Johnson and Security Adjudicator Kessler e-mail string re: the Agency's request to the U.S. Army CCF for a determination if the Plaintiff would be considered a threat under its "Insider Threat Task Force" (PE I, P. 3) similar to the 5 November 2009 terrorist mass shooting at Fort Hood (now Fort Cavazos), near Killeen, Texas, where U.S. Army Major Nidal Hasan fatally shot 13 people and injured more than 30 others. **The Agency produced no evidence to justify this inquiry.**

j. **CCF Security Adjudicator addressed Agency's "Insider Threat Task Force" assertion and abnormal number of inquiries into Plaintiff's case (PE J).** In the 22-23 January 2015 MSPB Transcript (Tr., Pp. 614-617), CCF Security Adjudicator Kessler found the "Insider Threat Task Force" unjustified (PE J, Tr. P. 616), and that Fort Rucker's abnormal number of checks on Plaintiff's adjudication status was an "infrequent thing" (PE J, P. 617) from Agencies.

k. **Agency Security Manager Johnson rebuffed two official attempts to release submitted documentation to CCF** (PE K). The Plaintiff submitted requests to Johnson via a 21 June 2011 email request which she responded to justifying withholding the information because she was unsure of the validity of the email address. (PE K, P. 2) She was also sent via USPS Certified Mail (PE K, Pp. 3-4) another official request which was never received a response. On 8 June 2011, the CCF replied to the Plaintiff's request for the evidence (PE K, P. 5), stating "if there were questions or concerns" to contact Security Manager Johnson. <u>That same day</u>, CCF published its decision to revoke the Plaintiff's

4

security clearance (PE K, Pp. 6-8). This was attached to a 9 June 2011 memorandum from Ms. Johnson's supervisor (PE K, P. 9), stating, again, if I had questions to contact her.

I. **Defense Office of Hearings and Appeals (DOHA) Administrative Judge found Agency misused Security Clearance process, and Agency's problems identifying and releasing documents** (PE L). In his 25 June 2012 Department of Defense (DoD) DOHA decision (USA-C No. 11-07912), **Judge Thomas Crean found the following:**

   1. "There is no doubt that Appellant is a thorn in the side of the command at Fort Rucker. He has filed numerous EEO complaints. The command attempted to terminate his government employment twice. He successfully defended himself and was awarded all pay and reinstatement at two arbitration hearings. It is also clear that after being unsuccessful with personnel actions, <u>the command turned to the security clearance process in an attempt to remove Appellant from government service. The security clearance process is not designed for and should not be used as a substitute or alternative to the procedure in the government personnel system.</u>" (PE L, Decision, P. 20)

   2. Judge Crean cited he "…held a pre-hearing telephone conference with Appellant's attorney and Department Counsel <u>on November 1, 2011. Since the file was voluminous and it was not clear what information DA CCF considered</u>, I directed Department Counsel to coordinate with the DA CCF, **and have them identify and provide all documents used to determine Appellant's access to classified information.**" (PE L, Decision, P. 3) NOTE: <u>The CCF published its revocation on 8 June 2011; however, five months later, it claimed it could not identify the evidence</u>.

   3. The DA <u>CCF was initially unable to identify the documents considered in reaching their decision</u> concerning Appellant. Department Counsel carefully culled the DA CCF file and identified 68 documents she believed were the basis for the DA decision. The DA CCF acknowledged that Department Counsel was correct and certified the 68 documents contained the information considered in reaching the revocation decision. Department Counsel diligently <u>coordinated with an attorney from the Office of the Judge Advocate General, U.S. Army, and with attorneys from Appellant's command to have the required documents released to Appellant</u>." (PE L, Decision, P. 3)

   4. Judge Crean also stated that "Appellant [Plaintiff], through counsel, stated that he was not aware of all of the information the DA CCF considered in making its revocation

5

decision...," and that "...The documents they requested would provide Appellant with the basis for the DA CCF's revocation decision. <u>The documents had either not been received, or if received, were so heavily redacted as to be of little use.</u>" (PE L, Decision, P. 3)

5. His Honor also cited that "The second procedural issue concerns the consideration by the DA CCF of new evidence after Appellant responded to the SOR. In this case, Appellant received the SOR on October 11, 2010, and responded on December 8, 2010. The LOR was issued on June 8, 2011." (PE L, Decision, P. 4)

6. On December 23, 2010, Appellant's garrison commander provided DA CCF a detailed letter stating his reasons why Appellant's security clearance should be revoked. The garrison commander raised new information in the letter which Appellant did not have the opportunity to refute or rebut. The garrison commander's letter is not specifically addressed in the June 8, 2011, revocation decision. However, it would be unusual for the DA CCF to not consider a commander's recommendation. <u>The consideration of this information without Appellant's knowledge and without the opportunity to provide explanation is a denial of due process, fundamental fairness, and calls into question the impartiality of the process.</u> It is recommended that the Central Adjudication Facility (CAF) not consider any information that an appellant has not been provided. Appellant must be afforded the opportunity to respond to any derogatory information." (PE L, Decision, P. 4)

m. **Defendants previously denied Plaintiff FOIA for Ranchino Legal Review** (PE M). The 14 October 2012 and 14 July 2014 Department of the Army Office of the Judge Advocate General letters to the Plaintiff denying previous FOIA requests for the 27 July 2010 Ranchino Legal Review due to Attorney-Client Privilege.

   1. **Attorney-Client Privilege work product and legal reviews cited as FOIA protected by the Defendant is <u>never mentioned once</u> in the AR 15-6 2006 version (PE N)** which was in effect during this action.

   2. **Said agency 2012 and 2014 denials (PE P, Pp. 2-3) apparently cite the current AR 15-6 regulation which did not go into effect until 2016 – two years *after* their denial letters.**

6

**n. The Investigation regulation in effect at the time of this action never cites legal reviews as attorney client privilege documents, nor FOIA protection (PE N).**

1. The 2 October 2006 version of Army Regulation 15-6 ("AR 15-6") Procedures for Investigating Officers and Boards of Officers (PE N) never mentions attorney-client work product labeling or FOIA protection.

2. In Chapter 2–3. Action of the appointing authority, the Judge Advocate's (JA's) review will determine— (1) Whether the proceedings comply with legal requirements. (2) What effects any errors would have. (3) Whether sufficient evidence supports the findings of the investigation or board or those substituted or added by the appointing authority (see para 3–10*b*). (4) Whether the recommendations are consistent with the findings. (PE N, P. 3)

3. In Chapter 2-3 c. (3), (PE N, P.3), Substantial errors are *(a)* ...those that have a material adverse effect on an individual's substantial rights. Examples are the failure to meet requirements as to composition of the board or denial of a respondent's right to counsel; *(b)* When such errors can be corrected without substantial prejudice to the individual concerned, the appointing authority may return the case to the same investigating officer or board for corrective action. **Individuals or respondents who are affected by such a return will be notified of the error, of the proposed correction, and of their rights to comment on both**; *(c)* If the error cannot be corrected, or cannot be corrected without substantial prejudice to the individual concerned, the appointing authority may not use the affected part of that investigation or board as the basis for adverse action against that person. NOTE: <u>This was never done as the Agency withheld the investigation until *after* the CCF decision.</u>

4. In Chapter 2-3 c. (4), (PE N, P. 4), *Failure to object,* No error is substantial within the meaning of this paragraph if there is a failure to object or otherwise bring the error to the attention of the legal advisor or the president of the board at the appropriate point in the proceedings. **Accordingly, errors described in (3) above may be treated as harmless if the respondent fails to point them out**. Evidence shows that, to date, the Ranchino legal review has been withheld from the Plaintiff, and, again, any errors couldn't be pointed out due to the withholding of the documents.

5. Plaintiff was never notified of any errors, and had the investigation withheld from him until after CCF made its second security clearance determination. <u>One of the reasons for withholding the information was due to a "criminal investigation"</u> which was <u>never conducted</u> (PE P, P. 5) cited in a 7 December 2010 letter.

7

o. **The updated AR 15-6 only begins the process of identifying and labeling legal reviews as attorney-client privilege documents protected under FOIA (PE O).**

   1. The 1 April 2016 Army Regulation 15-6 Procedures for Investigating Officers and Boards of Officers (PE O, P.6), Chapter 2-7 d., states that "…The legal review will be conducted in writing and included as part of the investigative or board report. The legal review should be appropriately marked as attorney work product and/or client advice, which is legally privileged and exempt from release under FOIA. (PE O, P. 6)

p. **Plaintiff made over a dozen for Ranchino Legal Review** (PE P). From 21 June 2010 to the Present, the Plaintiff has attempted to secure Ranchino Investigation Legal Review. The following is a list of attempts to secure the Ranchino information:
   1. **13 September 2010** – FOIA request to Agency FOIA Office
   2. **21 September 2010** – Request to Agency HR Office
   3. **7 October 2010** – Official Request to CCF after decision was reversed
   4. **7 December 2010** – Request to Chief of Staff (Col.) Ball; denied due to "criminal" probe
   5. **24 February 2011** – FOIA request for Ranchino investigation now labeled as "criminal" investigation denied
   6. **28 February 2011** – resulted in partial redacted release and no legal review
   7. **18 May 2011** – USPS Certified Mail request to Deputy Garrison Commander Mitchell for documents
   8. **23 May 2011** – USPS Certified Mail request to Garrison Commander (Col.) Muskopf for documents
   9. **22 June 2021** – Plaintiff email to Security Manager Johnson for documents; Johnson denies request as she was unsure of address
   10. **23 June 2011** – USPS Certified Mail request to Security Manager Johnson
   11. **15 August 2011** – Deputy Garrison Commander Mitchel denies AFGE 1815 Union request for Ranchino document in part due to possible SAUSA investigation which was nonexistent
   12. **1 November 2011** – After the Plaintiff attorney inquired to the DOHA Judge about the delayed release of the documents, the Agency was ordered to clarify <u>what information DA CCF considered</u>, and directed Department Counsel to coordinate with the DA CCF, <u>and have them identify and provide all documents used to determine Appellant's access to classified information.</u>

13. **24 February 2012** – Agency releases FOIA request misidentifying the Ranchino legal review and stating it was received in its redacted format, misleading the Plaintiff and defying the DOHA Administrative Judge's order.
14. **14 October 2012** – Department of the Army denies release of Ranchino legal review due to attorney-client privilege and FOIA protection.
15. **14 July 2014** -- Department of the Army denies release of Ranchino legal review due to attorney-client privilege and FOIA protection.
16. **28 August 2017** – FOIA request for all evidence against Plaintiff regarding a post bar which included all investigations
17. **2 August 2023** – Army Judge Advocate General denies Plaintiff's 27 October 2022 FOIA request for Ranchino legal Review
18. **8 September 2023** – Army Office of General Counsel (Defendant) upholds decision; neither entity makes mention of attorney-client privilege.

## III.  Summary and Conclusion

In addition to the facts listed in the overview, the following factors cripple the Agency position that this is an attorney-client work product protected under FOIA. To wit: 1) the communication was not only between the attorney and/or an agent and the client once it was released to a third-party security adjudicator as "evidence;" 2) the communication was not intended to be confidential, as not one but two legal reviews were freely forwarded, and the security adjudicator indicated it was sent by the Plaintiff, thus indirectly acknowledging no attorney-client protection; 3) the communication was not seeking legal advice, and; 4) no waiver was required regarding privilege because there was never privilege to waiver, and neither legal review was marked as such.

The additional information concerning this action is chilling. It depicts an Agency willing to falsify certification of an incomplete FOIA report. It also shows a history of withholding information from the Plaintiff and deleting emails, while simultaneously holding numerous ex parte communications regarding the overturning of the original favorable decision and its comfort in alleging the Plaintiff was some kind of threat. It shows Agency lawyers misleading the Plaintiff in stating the Agency had no role in the overturned favorable decision. The record also clearly shows a pattern of consistent rejection of over a dozen requests for the information used in the security clearance adjudication. More importantly, an Agency Defense Office of Hearing and Appeals (DOHA) Administrative Judge noted Due Process violations and the Agency's misuse of the security clearance adjudication system. (Please note that the Agency can overrule a DOHA AJ decision as non-binding.)

The Agency's denial of the release of the Ranchino Legal Review is not some staunch or heroic defense of attorney-client privilege, or even a defense of FOIA. It is purely an attempt to continue its ongoing cover-up of the collusion and corruption which occurred during this action. The 1988 *Navy v. Egan* decision ended all review of the merits of a security action, leaving only challenges to regulatory and/or procedural Due Process errors. In this action, the Agency has apparently decided to go after these last identified Due Process "errors." Absolute power corrupts absolutely: In this case the ease in which this transpired is extremely alarming and screams out for an investigation.

In its pleading, the Defendant states that "...Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the Court to find that he is entitled to relief." Also, the Defendant stated that "...In *Anderson*, the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (establishing that non-movant is "required to provide evidence that would permit a reasonable jury to find" in its favor). Finally, in its Patrick Declaration, it stated that "...Here, the Army has established that disclosing information protected by the attorney-client privilege would inhibit government attorneys from appropriately fulfilling their duties representing the United States by providing candid legal advice for fear that their mental impressions may be disclosed to persons other than the intended recipients of the legal advice." The Plaintiff respectfully disagrees with this position and facts.

Under 5 USC 7701 (c)(2)(A), the MSPB will not sustain an agency decision if the appellant proves the affirmative defense of harmful error in the agency's application of its procedures in arriving at a security clearance determination. *Rogers v. Department of Defense*, 115 LRP 47854 , 122 MSPR 671 (MSPB 2015), *citing Schnedar v. Department of the Air Force*, 114 LRP 2688 , 120 MSPR 516 (MSPB 2014). To prove this affirmative defense, the appellant must show both that the agency committed procedural error and that the error was harmful. *Rogers v. Department of Defense*, 115 LRP 47854 , 122 MSPR 671 (MSPB 2015), *citing Parker v. Defense Logistics Agency*, 80 FMSR 7008 , 1 MSPR 505 (MSPB 1980).

For the aforementioned reasons, the Plaintiff respectfully requests that His Honor: 1) ORDER the complete and unredacted release of Ranchino legal review so a de novo review of the Plaintiff's security action be conducted, and; 2) ORDER an independent investigation into the Agency actions.

I certify that the above pleading is true and accurate to the best of my knowledge.

4 MARCH 2024
Date

Signature

# UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
300 Constitution Avenue, N.W.
Washington, D.C. 20001

## CERTIFICATE OF SERVICE

I, Mark Geraghty Wonders, do hereby Certify that a true and correct copy of the foregoing along with its sixteen (16) exhibits (A through P) have been furnished by U.S.P.S. Certified Mail on this 4th day of MARCH 2024, to:

**Individuals**
Honorable Trevor N. McFadden
United States District Judge
U.S. District Court for the District of Columbia
300 Constitution Avenue, N.W.
Washington, D.C. 20001

**USPS Certified Mail Number**
7020 1810 0000 8857 2948

Special Assistant U.S. Attorney Patrick A. Doyle   7020 1810 0000 8857 2955
Civil Division, U.S. Attorney's Office
601 D. Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2574
patrick.doyle@usdoj.gov

4 MARCH 2024
Date

Signature