**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MARK GERAGHTY WONDERS**, |
| Plaintiff, |
| v. |
| **DEPARTMENT OF THE ARMY OFFICE OF THE GENERAL COUNSEL**, |
| Defendant. |

Case No. 1:23-cv-02770 (TNM)

<u>**MEMORANDUM OPINION**</u>

Fourteen years ago, the Department of the Army revoked Mark Wonders' security clearance. During the revocation process, an Army attorney wrote a legal memorandum for Wonders' investigating officer and Army command. In 2012, 2014, and 2022, Wonders submitted three Freedom of Information Act requests for this document. The Army denied the first two requests, citing the attorney-client privilege under FOIA Exemption 5. And it denied the last one, too, saying it was a duplicate.

Wonders now challenges the Army's response to his 2022 FOIA request. Wonders sued within the applicable statute of limitations, and he exhausted his administrative remedies. But the Army properly withheld the memorandum under the attorney-client privilege. So the Court will grant summary judgment to the Army and deny it to Wonders.

**I.**

The Army revoked Wonders' security clearance in 2010. *See* Pl.'s Opp'n and Cross-Mot. for Summ. J. ("Pl.'s X-MSJ") Ex. G at 2,[1] ECF No. 14-7. Under Army Regulation 15-6,

---

[1] The Court's page citations refer to the pagination automatically generated by CM/ECF.

Wonders' investigating officer requested a legal memorandum, called the "Legal Review," from an attorney at the Fort Rucker Office of the Staff Judge Advocate ("OSJA").  *See* Pl.'s X-MSJ Ex. B at 2, ECF No. 14-2.  On July 27, 2010, Wonders' investigating officer received that document.  And ever since, Wonders has tried to get a copy of it.

He submitted FOIA requests to the Army in 2012 and 2014.  But both times the Army withheld the Legal Review.  And it gave the same reason each time:  "The legal opinion is not releasable to you in accordance with the attorney-client privilege of FOIA Exemption 5 (5 U.S.C. § 552(b)(5))."  Pl.'s X-MSJ Ex. P at 20–21, ECF No. 14-16.  In each denial letter, the Army told Wonders he had a right to appeal the withholding decisions to the Secretary of the Army.  *Id.*  Yet Wonders never appealed the 2012 or 2014 requests.  Def.'s Mot. Summ. J. ("Def.'s MSJ"), J. Patrick Decl. ¶ 3, ECF No. 12-5 ("The Army General Counsel's Office advised me that they . . . do not have any record of Plaintiff ever filing an appeal with their office regarding our 2012 or 2014 denial letters.").

Then Wonders tried again with a fresh FOIA request in 2022.  In response, the Army said it was "taking no action on [the] request, as it is a duplicate of previous FOIA requests [Wonders] made in 2012 and 2014."  Pl.'s X-MSJ Ex. P at 23.  But this time Wonders appealed the determination to the Secretary.  *Id.* at 24.  His office denied the appeal, concluding that the Army had followed its policy "on duplicate requests."  *Id.*  Then the Secretary told Wonders he could "seek judicial review of this determination in the federal court system in accordance with the FOIA, 5 U.S.C. § 552(a)(4)(B)."  *Id.*

Wonders followed through and filed this *pro se* lawsuit against the Army.  The Complaint claims the Army violated FOIA and "due process" by withholding the Legal Review.  *See* Compl. at 4, ECF No. 1.  The Army filed a Motion to Dismiss, or in the alternative, Motion for

Summary Judgment.  *See* ECF No. 12.  Wonders opposed and filed a Cross-Motion for Summary

Judgment.  *See* ECF No. 14.  Those motions are ripe.

## II.

The Army argues either for dismissal under Federal Rule of Civil Procedure 12(b)(1) or

for summary judgment under Rule 56(a).  Def.'s MSJ at 1.

Start with the standard for dismissal under Rule 12(b)(1).  Federal courts "possess only

that power authorized by the Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of

Am.*, 511 U.S. 375, 377 (1994).  So Rule 12(b)(1) gives defendants the ability to make "a

threshold challenge to a court's jurisdiction."  *Ctr. for Biological Diversity v. Jackson*, 815 F.

Supp. 2d 85, 89 (D.D.C. 2011).  And when a defendant brings such a challenge, "the plaintiff

bears the burden of establishing that the court has jurisdiction."  *Id.* (citing *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 561 (1992)).

But Rule 12(b)(1) is an improper vehicle for the Army's arguments, which address the

statute of limitations, exhaustion, and the merits.  None of these arguments, at least in the context

of a FOIA case like this one, affect the Court's subject matter jurisdiction.  FOIA derives its

limitations period from 28 U.S.C. § 2401(a).  *See Spannaus v. DOJ*, 824 F.2d 52, 55 (D.C. Cir.

1987).  But "§ 2401(a)'s time bar is nonjurisdictional."  *Jackson v. Modley*, 949 F.3d 763, 778

(D.C. Cir. 2020).[2]  Similarly, FOIA's exhaustion requirement "is not jurisdictional because the

FOIA does not unequivocally make it so."  *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir.

2003).  And merits arguments, of course, are "not jurisdictional but instead relate to the

---

[2] *Jackson* overruled *Spannaus*'s jurisdictional treatment of § 2401(a).  *See Jackson*, 949 F.3d at
776 ("[W]e hold that [Supreme Court precedent] overrules our precedent treating § 2401(a)'s
statute of limitations as jurisdictional.").  But it did not disturb the remainder of *Spannaus*'s
reasoning on accrual and exhaustion in FOIA cases.  *Compare id.* at 776–778, *with Spannaus*,
824 F.2d at 56–59.

substance of [a] plaintiff's claim for relief." *Jackson*, 949 F.3d at 767 n.2.  So these dismissal arguments fit under Rule 12(b)(6), not Rule 12(b)(1).  *See, e.g.*, *id.* at 767.

Yet even if the Army made its arguments under Rule 12(b)(6), summary judgment offers the best path forward because both parties rely on "materials that are not part of the pleadings." *Pinson v. DOJ*, 61 F. Supp. 3d 164, 172–73 (D.D.C. 2015).  The Army offers a declaration from a senior Army official.  *See* ECF No. 12-5.  And Wonders pulls liberally from transcripts, emails, memoranda, and other exhibits.  *See* ECF Nos. 14-1 through 14-16.  Given the parties' reliance on external materials, "the Court will evaluate" their motions "under the summary judgment standard."  *Pinson*, 61 F. Supp. 3d at 173 ("FOIA cases typically and appropriately are decided on motions for summary judgment." (cleaned up)).

Summary judgment may be awarded when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material when it can affect the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  At this stage the Court does not "weigh the evidence" but determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251–52.

In a FOIA case "brought to compel production, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements."  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up).

Because Wonders sues *pro se*, the Court liberally construes his filings and considers them all together. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *cf. Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).  He must still, however, comply with the Federal Rules of Civil Procedure.  *See Amiri v. Nat'l Science Found.*, 664 F. Supp. 3d 1, 10–11 (D.D.C. 2021), *aff'd*, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022).

### III.

The Army argues that Wonders' suit founders on the statute of limitations, the exhaustion requirement, and the merits.  The Court considers each argument in turn.

### A.

Consider first the Army's intertwined arguments on the statute of limitations and exhaustion.  FOIA incorporates the six-year limitations period in 28 U.S.C. § 2401(a).  This means a FOIA requester must file any complaint "within six years after the right of action first accrues."  28 U.S.C. § 2401(a).

"A cause of action against an administrative agency 'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court."  *Spannaus*, 824 F.2d at 56 (citing *Crown Coat Front Co. v. United States*, 386 U.S. 503, 510–11 (1967)).  In turn, "a suit cannot be maintained in court—and a cause of action does not 'first accrue'—until a party has exhausted all administrative remedies whose exhaustion is a prerequisite to suit."  *Id.* at 56–57 (citing *Crown Coat*, 386 U.S. at 510–19).

FOIA also comes with an exhaustion requirement.  Within 10 days, the agency must "determine . . . whether to comply with" a FOIA request, "immediately notify" the requester, and tell him he has a right "to appeal to the head of the agency" any "adverse determination." 5 U.S.C. § 552(a)(6)(A)(i).  Then the agency must "make a determination" on any appeal within

20 days.  *Id.* § 552(a)(6)(A)(ii).  And if the requester loses, the agency must tell the requester of his right to seek "judicial review of that determination."  *Id.*  "Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990) (collecting cases).

To bring things full circle, "a cause of action under FOIA first accrues when the requester first exhausts his remedies."  *Spannaus*, 824 F.2d at 59.  Only then does the clock begin ticking on the six-year limitations period.  *See id.*

To the extent that Wonders seeks relief on his 2012 and 2014 requests, he never exhausted his administrative remedies.  In support of its Motion, the Army attached the Declaration of John P. Patrick, who serves in the Office of the Judge Advocate General.  *See* J. Patrick Decl. ¶ A, ECF No. 12-5.  He explains that the Army General Counsel's Office does "not have any record of [Wonders] ever filing an appeal with their office regarding [the Army's] 2012 or 2014 denial letters."  *Id.* ¶ 3.  Wonders does not dispute this.  So his choice to forgo administrative appeals "preclude[s] [him] from ever bringing suit on [those] request[s]."  *Oglesby*, 920 F.2d at 65.

The Army argues that the statute of limitations also bars Wonders' claims on the 2012 and 2014 requests.  *See* Def.'s MSJ at 10.  Not so.  Under *Spannaus*, a cause of action accrues for statute-of-limitation purposes only after "a party has exhausted all administrative remedies."  824 F.2d at 57.  Because Wonders failed to exhaust his administrative remedies for the 2012 and 2014 requests, no claim accrued—meaning the limitations period never began to run.  So the exhaustion requirement, not the limitations period, precludes judicial review of those requests.  *See id.*; *see also Oglesby*, 920 F.2d at 61–62.

The exhaustion calculus changes for Wonders' 2022 request.  When the Army denied this request, Wonders appealed to the Secretary.  *See* Pl.'s X-MSJ Ex. P at 24.  In doing so, he exercised his right "to appeal to the head of the agency any adverse determination."  5 U.S.C. § 552(a)(6)(A)(i).  The Army concedes this fact.  *See* J. Patrick Decl. ¶ 3 ("Plaintiff filed an appeal to the Army General Counsel's Office[.]").  So on this request, Wonders did all that FOIA requires of him; he exhausted his administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(A)(i)–(ii).  And the six-year limitations period poses no independent bar to this 2022 request.

Still, the Army insists that exhaustion bars review of this request.  In its view, Wonders' failure to exhaust his remedies on the 2012 and 2014 requests precludes him from ever exhausting his remedies on a future duplicate request (i.e., the one in 2022).  *See* Def.'s MSJ at 11–12.  The Army backs this argument with a citation to *Toensing v. U.S. Department of Justice*, 890 F. Supp. 2d 121 (D.D.C. 2012).  *See id.*  To be sure, *Toensing* says: "When *withholding decisions* are made in an unexhausted request, a subsequent, identical request cannot cure a prior failure to exhaust" administrative remedies.  890 F. Supp. 2d at 140.

But the Army overreads *Toensing* for two reasons.  *First*, that case addressed factually dissimilar circumstances.  The plaintiffs there never took "an administrative appeal on the merits."  *Id.* at 138 n.7.  Instead, they "satisfied the exhaustion requirement through *constructive* exhaustion."  *Id.*  Here, Wonders actually appealed the 2022 request to the Secretary.  *See* Pl.'s X-MSJ Ex. P at 24.  And the Secretary denied that appeal on procedural grounds.  Rather than grappling with the merits of the withholding decision, the Secretary told Wonders that the Army's "decision complied with" its policy "on duplicate requests."  *Id.*  *Toensing* expressly distanced its reasoning from this factual scenario, where "administrative review of the withholding decision[] is not on the merits."  890 F. Supp. 2d at 138 n.7.

7

*Second*, reviewing the 2022 request—despite the earlier exhaustion defects—"presents no risk of undermining the purposes and policies underlying the exhaustion requirement." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  Exhaustion exists "to prevent premature interference with agency processes, to give the parties and the courts benefit of the agency's experience and expertise and to compile an adequate record for review." *Id.*  Reviewing Wonders' 2022 request tinkers with none of this.  Indeed, Wonders "did not bypass the administrative review process but pursued it to its end." *Id.*  And once the Secretary denied his appeal, Wonders "availed himself of the right to seek judicial review as the [Secretary] told him he could." *Id.*; *see also* Pl.'s X-MSJ Ex. P at 24.  So allowing review will not "cut off the agency's power to correct or rethink initial misjudgments or errors." *Oglesby*, 920 F.2d at 64.

Nor does it matter that Wonders' 2022 request duplicated earlier requests.  The Army could have made fresh withholding decisions for the 2022 request.  Instead, the Army relied on its "policy concerning duplicate FOIA requests" and denied the request without a second look.  J. Patrick Decl. ¶ 2.  While nothing in FOIA prohibits this practice, a duplicate request still gives the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Wilbur*, 355 F.3d at 677 (cleaned up).  An agency may decline the opportunity, but doing so will not preclude a requester from exhausting his administrative remedies.  *Cf. Spannaus*, 824 F.2d at 61 ("[N]othing" in FOIA "prevents [someone] from requesting the same documents decade after decade" because he may "simply refile his FOIA request . . . and restart the process[.]").

Yet the Army's procedural arguments still have bite because Wonders failed to address them.  *Compare* Def.'s MSJ at 5–6, *with* Pl.'s X-MSJ, *and* Pl.'s Reply, ECF No. 18.  "[I]t is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and

addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). And "[t]his principle applies even to parties proceeding without legal representation, like [Wonders]." *Paul v. Didizian*, 819 F. Supp. 2d 31, 36 (D.D.C. 2011). "Based on [Wonders'] failure to respond to the [Army's] argument[s], the Court shall, in an exercise of its discretion, threat [them] as conceded." *Id.*

Even so, "exhaustion is a prudential consideration rather than a jurisdictional prerequisite." *Wilbur*, 355 F.3d at 677. And the rule the Army advocates—that failure to fully exhaust an initial FOIA request forever bars the requester from obtaining those materials—is a harsh sanction unsupported by statute, precedent, or logic. So the Court will alternatively examine and deny Wonders' 2022 request on the merits.

## B.

The Army withheld the Legal Review under FOIA Exemption 5. That exemption permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996). This typically gives rise to three protections: the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

The Army argues the attorney-client privilege justifies its withholding decision. Def.'s MSJ at 12–13. This "privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice." *Tax Analysts v. IRS*, 117 F.3d 607, 618

(D.C. Cir. 1997).  It also shields "communications from attorneys to their clients if the communications rest on confidential information obtained from the client."  *Id.* (cleaned up).  In a FOIA case like this one, "the burden rests with the Government to prove, through 'detailed and specific information,' that the withheld information falls within the domain of the privilege." *Cause of Action Inst. v. DOJ*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018) (quoting *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998)).

So the applicability of the privilege turns on the Army's ability to prove "five essential elements":

> (1) The holder of the privilege is, or sought to be, a client;
> (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his capacity as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice;
> (4) the privilege has been claimed by the client;
> (5) a fundamental prerequisite to the assertion of the privilege is confidentiality both at the time of the communication and maintained since.

*Id.*

The Army satisfies each element.  The Army counts as a client, and it communicated with an attorney at the Fort Rucker OSJA.  *See Tax Analysts*, 117 F.3d at 618 (explaining that "the 'client' may be the agency and the attorney may be an agency lawyer"); J. Patrick Decl. ¶ 5.  The relevant communication—the Legal Review—concerned facts about Wonders' conduct that the Army shared with the attorney.  J. Patrick Decl. ¶ 5(a)–(b).  Based on that information, the attorney gave legal advice to Wonders' investigating officer and Army command.  *Id.* ¶ 5(c).  For instance, the attorney evaluated "[w]hether [Wonders'] investigation complies with legal requirements" and "[w]hether sufficient evidence supports the findings of the investigation."  *Id.*

¶ 5(b)(1), (b)(3).  Finally, the Army asserts it "has maintained confidentiality of this July 27,

2010 attorney-client communication."  *Id.* ¶ 5(d).

Wonders objects to this last element.  He claims the Army shared the Legal Review with

third parties, vitiating the privilege.  *See* Pl.'s X-MSJ at 9.  Specifically, he says the Army gave

the Legal Review to two outside officials: a Security Adjudicator at the Army's Central

Clearance Facility ("CCF") and an Administrative Law Judge at the Defense Office of Hearings

and Appeals ("DOHA").  *See* Pl.'s X-MSJ at 2; Pl.'s Reply at 3, ECF No. 18.

Assuming Wonders is right about those disclosures, the Legal Review remains privileged.

Of course, confidentiality is "a fundamental prerequisite to assertion of the privilege."  *Coastal*

*States Gas Corp.*, 617 F.2d at 863.  But "[w]hen the client is by nature a group, as is true of both

the government and corporations, the courts have agreed that the privilege should not be defeated

by some limited circulation beyond the attorney and the person within the group who requested

the advice."  *Id.*

The test, according to the D.C. Circuit, "is whether the agency is able to demonstrate that

the documents, and therefore the confidential information contained therein, were circulated no

further than among those members of the organization who are authorized to speak or act for the

organization in relation to the subject matter of the communication."  *Id.* (cleaned up).  Put

another way:  A communication may remain privileged unless it has "been made known to

persons other than those who need to know" about it.  *Id.*

An adjudicator and an ALJ needed to know about the "confidential facts" that the Army

gave to the attorney who authored the Legal Review.  *Id.*  The subject matter of that document

concerned "whether [Wonders] committed a security breach" that merited "adverse

administrative action."  J. Patrick Decl. ¶ 5(a)(1).  And both the adjudicator and the ALJ were

"authorized to speak or act for the [Army]" on that very issue.  *Coastal States Gas Corp.*, 617 F.2d at 863.  Indeed, CCF adjudicators make personnel security determinations for the Army.[3] And ALJs at DOHA "issue[] decisions in personnel security clearance cases for contractor personnel doing classified work for all [Department of Defense] components."[4]

In sum, the Army only distributed the Legal Review on a "need to know basis . . . to [individuals] that were authorized to speak or act for the [Army]" on Wonders' security clearance.  *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002) (extending privilege to documents shared with outside contractors).  So "[t]he disclosure of [the Legal Review] to the [adjudicator and ALJ] did not waive the privilege."  *Cause of Action Institute v. DOJ*, 330 F. Supp. 3d 336, 351 (D.D.C. 2018); *accord Pub. Emps. for Env't Resp. v. U.S. Env't Prot. Agency*, 211 F. Supp. 3d 227, 233 (D.D.C. 2016).

Even so, the Army faces two final hurdles to justify its withholding decision.  *First*, the Army can withhold the Legal Review "only if" it "reasonably foresees that disclosure would harm an interest protected by" FOIA Exemption 5.  5 U.S.C. § 552(a)(8)(A)(i)(I).  It does.  The Legal Review contains the "opinions, advice, analysis and recommendations" of an OSJA attorney who was advising Wonders' investigating officer and Army command.  J. Patrick Decl. ¶ 6.  The Army claims that disclosing this memorandum "would harm the full and free discussion

---

[3] *See* DoD 5200.2-R at App'x 8, *Dep't of Defense Personnel Security Program* (Jan. 1987, reissued incorporating changes Feb. 23, 1996); *see also Central Clearance Facility*, Personnel Security Appeals Board, https://perma.cc/V9ZU-852W (last visited Aug. 19, 2024).  The Court takes judicial notice of this website, and the one in the following footnote, because they are both official websites of the U.S. Government.  *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

[4] Defense Office of Hearings and Appeals, https://perma.cc/MDL8-MTRC (last visited Aug. 19, 2024); *see also* DoDD 5220.6 at E3.1.2, *Defense Industrial Personnel Security Clearance Review Program* (Jan. 2, 1992).

of attorney-client privileged matters within the agency" and "seriously disrupt open communication between the command and attorneys." *Id.* It also expects that disclosure would "deprive government decision-makers of the full and candid advice of their counsel." *Id.* This counts as a "non-generalized explanation" of reasonably foreseeable harm—especially given the attorney-client privilege context, where "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120, 124 (D.D.C. 2021); *cf. also Emuwa v. DHS*, --- F.4th ----, 2024 WL 4019115, at *3 (D.C. Cir. Sept. 3, 2024) (noting, in deliberative-process discussion, that "foreseeability of harm" may be "manifest from the very context and purpose of the communications" (cleaned up)).

*Second*, the Army must also "consider whether partial disclosure of information is possible" and "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii). In short, the agency must "demonstrate that all reasonably segregable material has been released." *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002). The Legal Review is not reasonably segregable. A senior Army official swears he "reviewed the document, page-by-page and line-by-line," and concluded "that there are no non-exempt portions that can be segregated from the exempt portions and produced." J. Patrick Decl. ¶ 8. He "determined that the document is intricately intertwined with legal analysis and no portions of it may be released beyond what was previously" given to Wonders. *Id.* These statements entitle the Army "to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And Wonders has produced no evidence to rebut this presumption. *Id.* So the Army has satisfied its segregability obligation.

**C.**

Finally, Wonders' filings include passing references to a due process claim. *E.g.*, Compl. at 4; Pl.'s X-MSJ at 9. Assuming he has made "a short and plain statement" of this claim, Fed. R. Civ. P. 8(a)(2), it would not be "a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6).

The Fifth Amendment says: "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In its procedural and substantive forms, a due process claim turns on the existence of "a protected liberty or property interest." *Deryck v. Dep't of Def.*, No. 1:22-cv-3290, 2023 WL 3303832, at *3 (D.D.C. May 8, 2023) (citing *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (procedural due process) and *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) (substantive due process)).

Neither exist here. FOIA does not give Wonders "a property interest in the document[] he seeks." *Id.* "And because [Wonders] does not 'ha[ve] a right to a security clearance,' the revocation of his clearance 'cannot serve as a predicate liberty or property interest.'" *Id.* (first quoting *Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989), then quoting *Palmieri v. United States*, 72 F. Supp. 3d 191, 206–07 (D.D.C. 2014), *aff'd*, 896 F.3d 579 (D.C. Cir. 2018)).

**IV.**

The exhaustion requirement bars review of Wonders' first two tries to retrieve the Legal Review. And the Court grants as conceded the Army's procedural arguments on his last attempt.

14

Alternatively, the Army properly invoked FOIA Exemption 5 for the Legal Review.  And to the extent that Wonders asserts a due process claim, it too fails on the merits.

A corresponding Order will issue today.

Dated: September 11, 2024                    TREVOR N. McFADDEN, U.S.D.J.